**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kristina L. Larson,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-21-02164-PHX-SPL<br><br>**ORDER** |

At issue is the denial of Plaintiff Kristina Larson's Application for Social Security Insurance Benefits ("SSI") by the Social Security Administration ("SSA") under Title II of the Social Security Act ("the Act"). Plaintiff filed a Complaint with this Court seeking review of that denial. (Doc. 1) The Court has reviewed now addresses Plaintiff's Opening Brief ("OB"), Defendant Social Security Administration Commissioner's Answering Brief ("AN"), Plaintiff's Reply, and the administrative record ("AR"). The Court finds the administrative law judge's ("ALJ") decision is supported by substantial evidence and now affirms. (AR 17–34).

**I.   BACKGROUND**

Plaintiff filed the present application for Title II disability on April 20, 2018 alleging disability beginning May 1, 2013. (AR 17, 131). The SSA denied her claims at the initial and reconsideration stages of administrative review. (AR 156, 164). Plaintiff then requested a hearing before an ALJ. (AR 169). On August 20, 2020, the ALJ heard

testimony from Plaintiff and an independent Vocational Expert ("VE"). (AR 43–44). Then, on March 9, 2021, the ALJ held a supplemental hearing at which Plaintiff, a VE, and two medical experts testified. (AR 77–79). The ALJ found Plaintiff not disabled[1] in a decision issued April 5, 2021. (AR 14).

In her report, the ALJ found Plaintiff had the severe[2] impairments of lumbosacral spondylosis, chronic pain syndrome, neuritis and radiculitis, fibromyalgia, and chronic fatigue syndrome. (AR 20). However, the ALJ found Plaintiff's chronic obstructive pulmonary disease ("COPD") and gastroesophageal reflux disease ("GERD") caused "no more than a minimal limitation of [Plaintiff's] physical or mental ability to do basic work activities" and were therefore not severe. (AR 20).

Similarly, the ALJ found Plaintiff's mental health impairments not severe. (AR 20). The ALJ found that when considered singly and in combination, Plaintiff's substance dependence, anxiety, major depressive disorder ("MDD" or "depression"), and post-traumatic stress disorder ("PTSD") caused "no more than a minimal limitation in her ability to perform basic mental work activities." (AR 20). In reaching this determination, the ALJ considered Plaintiff's functional limitations in the following categories, together knowns as the paragraph B categories: (1) understanding, remembering, and applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a (c)(3). (AR 20–21). The ALJ determined Plaintiff had no more than mild limitations in any of the paragraph B categories. (AR 21)

Despite her impairments, the ALJ determined Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined by 20 CFR 404.1567(b) with the following exceptions:

---

[1] For the purposes of social security disability insurance benefits, "disability" is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A).

[2] "[A]ny impairment or combination of impairments which significantly limits [a person's] physical or mental ability to do basic work activities" is considered "severe." 20 C.F.R. § 404.1520 (c)

>in an 8-hour day with normal breaks, she can occasionally lift and/or carry up to 20 pounds and frequently up to 10 pounds; stand and/or walk for about 6 hours total and sit for about 6 hours total. She can occasionally climb stairs, but never scaffolding or ropes. She can occasionally balance, stoop, kneel, crouch, or crawl. (AR 22)

Based on the above and testimony from neutral vocational experts, the ALJ determined Plaintiff would be able to perform her past relevant work as a mortgage assistant and is therefore not disabled. (AR 34). The Appeals Council denied review and the ALJ's decision became final. (AR 1). Plaintiff appeals. (Doc. 1).

## II.     THE SEQUENTIAL EVALUATION PROCCESS

In determining whether a claimant is disabled for the purposes of the Act, the ALJ must follow a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but that burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step one, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a severe medically determinable impairment. 20 C.F.R. § 404.1520(a)(4)(ii) If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or is medically equivalent to an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. § 404.1520(a)(4)(iii) ("the Listings"). If so, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If not, the analysis proceeds to step four where the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. *Id.* If she cannot, the analysis proceeds to the fifth and final step, where the ALJ determines if the claimant can perform any other work in the national economy based on her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant cannot, she is disabled. *Id.*

### III. LEGAL STANDARD

When determining whether to reverse the Commissioner's decision, this Court only reviews issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court will affirm the Commissioner's final ruling unless it is based on legal error or lacks the support of substantial evidence. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted). Though the Court must consider the record as a whole, "the key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

### IV. DISCUSSION

Plaintiff argues the Commissioner improperly addressed multiple medical opinions and in doing so, failed to find her mental impairments severe at step two of the sequential evaluation process. (OB p.1). The Court will address these issues in turn.

A. THE ALJ PROPERLY ADDRESSED MEDICAL OPINIONS.

Under the former SSA regulatory scheme, ALJs gave a treating physician's opinion "'substantial weight' and could only reject such opinion by providing 'clear and convincing reasons,' if the opinion is uncontradicted by other evidence, or 'specific and legitimate reasons' otherwise." *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022). In 2017, the SSA revised its regulations regarding the evaluation of medical evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). As Plaintiff filed her case after 2017, it is governed by the new regulations. (AR 17). The ALJ was therefore not required to adhere to a hierarchy of medical opinions. 20

C.F.R. §§404.1520c(a)–(b). Rather, the ALJ meets her burden by articulating the persuasiveness of each opinion using factors set forth in the regulations. *Id.* Supportability and consistency are the most important of these factors but ALJs may also consider the nature of the treatment relationship, the medical source's specialization, and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§404.1520c(a)(c).

Here, the ALJ found the opinions of the third-party medical expert ("ME") Dr. Peterson, and the psychological examiner, Dr. Abreu, persuasive. (AR 30–31). Doctors Peterson and Abreu opined that Plaintiff experienced no more than mild limitations in the paragraph B categories. (AR 94–96, 621). Plaintiff takes issue with the ALJ's reliance on Dr. Peterson and Dr. Abreu's opinions as Dr. Abreu examined Plaintiff only once and Dr. Peterson did not examine her at all. (OB 7–8). In contrast, Dr. Schilling, who's opinion the ALJ did not find persuasive, treated Plaintiff for five years. (OB p. 10). Defendant argues that the ALJ properly addressed the medical opinions in accordance with the new SSA regulations. (AN 13). The Court agrees.

### Dr. Schilling's Opinion

Dr. Schilling, Plaintiff's treating psychologist, opined that Plaintiff suffered marked or extreme limitations in each of the paragraph B categories. (AR 1079). She also determined that Plaintiff displayed a "minimal capacity to adapt to changes in the environment or to demands that are not already a part of daily life." (AR 1079). Following the supplemental hearing, Dr. Schilling submitted a letter to the Appeals Council expressing her disagreement with Dr. Peterson and the ALJ's opinions. (AR 42). In this letter, Dr. Schilling clarified that she had determined Plaintiff experienced limitations in each of the paragraph B categories "based on generalized observations of how [Plaintiff's] diagnoses impact functioning in each area when depressive episodes or PTSD symptoms are present." (AR 42).

In finding Plaintiff's mental health impairments not severe, the ALJ rejected Dr. Schilling's medical opinion. (AR 33). The ALJ found Dr. Schilling's opinions unpersuasive as they were not supported by detailed rationale, were inconsistent with the

findings of other providers, dismissed Plaintiff's use of cigarettes as a "coping mechanism," and were inconsistent with her own treatment notes. (AR 33).

*1. Dr. Schilling Did Not Dismiss Plaintiff's Use of Cigarettes.*

The ALJ found Dr. Schilling's opinion unpersuasive in part because she "dismissed [Plaintiff] smoking cigarettes as a coping mechanism." (AR 33). In contrast, Dr. Peterson found Plaintiff's smoking might exacerbate her COPD symptoms and have a "tremendous impact" on Plaintiff's anxiety. (AR 33, AR 88). Plaintiff argues the ALJ erred in finding Dr. Schilling ignored the possibility that smoking exacerbated Plaintiff's symptoms. (OB 12–13). In her letter to the Appeals Council, Dr. Schilling denied justifying Plaintiff's cigarette use and claimed eliminating smoking was a "future therapeutic goal." (AR 42). She also acknowledged that smoking could exacerbate anxiety. (AR 42). However, Dr. Schilling concluded that Plaintiff's smoking was unlikely to be a predominant cause of her anxiety as the course of Plaintiff's symptomology had "no direct relation to smoking." (AR 42).

The ALJ's assertion that Dr. Schilling failed to consider the negative effects of smoking misrepresents her opinion. However, the Court finds this error harmless as it is unlikely to change the outcome of the disability determination. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[T]he court will not reverse the decision of the ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." (Internal quotation marks and citation omitted)).

*2. Dr. Schilling Contradicts Other Medical Opinions.*

The ALJ found Dr. Schilling's opinion unpersuasive because it is inconsistent with the observations of Plaintiff's other medical providers. (AR 33). Dr. Abreu found Plaintiff suffered no limitations in any of the paragraph B categories and opined that Plaintiff may have embellished her symptoms. (AR 619–21). Following clinical testing, Dr. Jain concluded Plaintiff's results were "suggestive of average cognitive functioning" despite

- 6 -

Plaintiff's dysthymia.³ Dr. Peterson opined that Plaintiff suffered no more than mild limitations in any of the paragraph B categories. (AR 94–95).

Plaintiff directs the Court to the opinions of medical providers who, like Dr. Shilling, found Plaintiff's mental health impairments lead to serious functional limitations. (OB 13). However, the ALJ properly discounted these opinions by analyzing their persuasiveness using the factors set forth in 20 C.F.R. § 404.1520c.

Jennifer Burns determined Plaintiff had "debilitating PTSD" to the point where she could not work. (AR 734). But determining whether a claimant is capable of working is solely within the Commissioner's purview. 20 C.F.R. §§404.1520b(c)(3). An opinion that merely states an individual is unable to work is inherently unpersuasive. *Id.*

Plaintiff also notes that nurse practitioner Karen Campbell opined Plaintiff should only work part time, should not be in stressful situations, and should work from home whenever possible to avoid commuting. (OB 14, AR 500). The ALJ found Campbell's opinion unpersuasive in part because it was made prior to the alleged onset date ("AOD"). (AR 32). Campbell examined Plaintiff in March of 2013, one month before Plaintiff's AOD. (AR 17, 498). Her opinion is less persuasive as it does not address Plaintiff's condition during the relevant time frame. 20 C.F.R. § 404.1520c(c)(1). ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions. . . will be."). The ALJ did not err in rejecting her medical opinion.

Finally, Plaintiff notes that the state's consultive psychologist, Dr. Mark Berkowitz, opined that Plaintiff experienced moderate limitations in two of the paragraph B categories. (OB 14). Dr. Berkowitz examined Plaintiff in April 2019 and opined that she experienced moderate limitations in interacting with others and in concentrating, persisting, or maintaining pace. (AR 146, 152). The ALJ determined Dr. Berkowitz's opinion was not persuasive because it was not consistent with the record as a whole and conflicted with the

---

³ Dysthmia is a mood disorder characterized by chronic mildly depressed or irritable mood often accompanied by other symptoms (such as eating and sleeping disturbances, fatigue, and poor self-esteem).

findings of the medical experts who reviewed the entire record. (AR 33).

The ALJ correctly notes that Dr. Berkowitz's opinion is inconsistent with Dr. Peterson's opinion. (AR 33). Dr. Peterson reviewed the entire record and concluded Plaintiff had no more than mild limitations in any of the paragraph B categories. (AR 93–96). The ALJ also determined Dr. Berkowitz's opinion was inconsistent with Plaintiff's "objective mental status exam findings during the relevant time period, her ability to travel during the relevant time period without noted difficulty, and the efficacy of some treatment modalities." (AR 33). Dr. Schilling notes that Plaintiff's condition improved with psychotherapy in February and November 2018. (AR 592, 691). Plaintiff travelled to Colorado without much difficulty in 2018 and 2019. (AR 613-14, 975). Plaintiff's Mental Status Evaluations ("MSEs") note normal cognition. (AR 537–94; 616–20; 784–9). Substantial evidence supports the ALJ's conclusion.

*3. Dr. Schilling's Treatment Notes Support Her Opinion.*

The ALJ determined Dr. Schilling's opinions were not supported by her own treatment notes, "particularly over the relevant time period which shows intact functional status and improvement with treatment." (AR 33). Dr. Schilling's notes document Plaintiff's treatments for depression, anxiety, and PTSD. Plaintiff's mental status evaluations ("MSEs") from May to July of 2020 are largely unremarkable. (AR 1192–93, 1244–47, 1255–83). During this period, Dr. Schilling observed that even when Plaintiff appeared with severely depressed mood, her cognitive functions remained intact. (AR 957–1069). However, Schilling's records from August to November 2020 note Plaintiff's deficient concentration and tangential cognitive functioning. (AR 1444–93). The ALJ failed to address records from this period in her decision. (AR17–34).

Then, beginning in December 2020, Plaintiff's mood, affect, memory, and judgement returned to normal though her thought process remained "tangential." (AR 1499–1515). Beginning December 23, 2020, Dr. Schilling had "no concerns" about Plaintiff's thought process. (AR 1518–19). From then forward, Schilling's notes describe Plaintiff as alert and having normal mood, affect, thought content, and judgement. (AR

1382–1411).

Plaintiff argues that the recurrent nature of her mental health impairments supports Dr. Schilling's opinion. (OB 10). The Court agrees. In *Garrison v. Colvin*, the Ninth Circuit acknowledged that when addressing mental health impairments, "[c]ycles of improvement and debilitating symptoms are a common occurrence . . . ." 759 F.3d 995, 1017 (9th Cir. 2014). The court found the ALJ erred in rejecting Garrison's testimony simply because her symptoms waxed and waned throughout the course of treatment. *Id.*

In her letter to the Appeals Council, Dr. Schilling opined that despite improvements to Plaintiff's emotional well-being, "primary concerns relate to inconsistency with engagement in activities due to the cyclical nature of [Plaintiff's] Major Depressive Disorder and emotional dysregulation . . . ." (AR 42). Dr. Schilling went on to opine that Plaintiff experienced "extreme limitations" in certain functional areas "when depressive episodes or PTSD symptoms are present." (AR 42). Like the plaintiff in *Garrison*, Plaintiff's diagnoses remained constant even as her symptoms waxed and waned. (AR 1420–1519). *Id.* at 1018.

ALJ's must consider a treating physician's opinion "in the context of the overall diagnostic picture" she draws. *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). Here, the ALJ failed to acknowledge the many MSEs that documented Plaintiff's functional limitations during her major depressive episodes. (AR 957–1069, 1192–93, 1244-47. 1255–83, 1444–1515). Dr. Schilling's treatment notes depict a cycle of impairment and recovery. (AR 42, 957–1069, 1192–93, 1244–47, 1255–83, 1420–1519). On this record, the Court cannot say Dr. Schilling's treatment notes contradict her medical opinion.

  4. *Dr. Schilling's Opinion is Vague.*

However, the ALJ is correct that Dr. Schilling's report is vague and "not well supported by detailed rationale." (AR 33). In January 2019, Plaintiff's attorney asked Dr. Schilling to complete a questionnaire regarding Plaintiff's mental health. (AR 722–23). Dr. Schilling stated that she would be unable to evaluate Plaintiff's Mental Residual Capacity

("MRC") and that Plaintiff would need to be assessed by a forensic or neuropsychologist. (AR 730). She therefore left the MRC evaluation form blank and only completed portions of the questionnaire related to listing 12.04. (728–29). But both the MRC and the listing questionnaire asked Dr. Schilling to opine on Plaintiff's functional limitations in the paragraph B categories. (724–32). The Listing Questionnaire asked Dr. Schilling whether Plaintiff had marked or extreme limitations in any of the paragraph B categories. (AR 729). Dr. Schilling marked "yes," but did not specify the extent of Plaintiff's limitations in any of the Paragraph B categories. (AR 729). It is therefore unclear whether she believes Plaintiff experiences mild, moderate, or severe limitations in each category. The MRC asked more specific questions regarding Plaintiff's limitations in each of the paragraph B categories. (AR 730–32). Dr. Schilling did not answer these questions and instead wrote that Plaintiff would need to be seen by a specialist. (AR 730).

Additionally, Dr. Schilling's opinion is in the form of a checklist and does not reference medical evidence. (1077–79). In *Batson*, the Ninth Circuit upheld the ALJ's rejection of a treating physician's medical opinion because "it was in the form of a checklist, did not have supportive objective evidence, was contradicted by other statements and assessments of Batson's medical condition and was based on Batson's subjective descriptions of pain." 359 F.3d 1190, 1195 (9th Cir. 2004). Such is the case here. Dr. Schilling's checklist opinion did not include references to the record nor her treating notes. (AR 1077–79). Dr. Peterson and Dr. Abreu disagreed with Schilling's opinion that Plaintiff experienced severe limitations in the four functional areas. (AR 94-96, 621). Plaintiff scored in the average or slightly below average range on formal mental status assessments. (AR 530–31, 616–20).

Following the ALJ's determination, Dr. Schilling submitted a letter to the Appeals Council detailing her disagreement with the ALJ's characterization of her testimony and clarifying her opinion. (AR 42).  But this letter—which focused primarily on Plaintiff's cigarette and cannabis use— also fails to cite to any medical evidence and is therefore left vague.  (AR 42).

The ALJ's conclusion that Dr. Schilling's notes did not support her opinion is incorrect. However, substantial evidence supports the ALJ's determination that Dr. Schilling's opinion is not persuasive due to its vagueness. ALJ's must assign more weight to medical opinions that are well supported[4] and consistent[5] with the record as a whole. 20 C.F.R. § 404.1520c(c). Dr. Schilling's opinion is incomplete and internally inconsistent. (AR 724–32). It does not cite to Plaintiff's medical record and is not consistent with Dr. Peterson or Dr. Abreu's determinations. (AR 530–31, 616–20, 724–32, 1077–79). Dr. Schilling claimed Plaintiff would need to be examined by a neuropsychiatrist to determine her mental residual capacity but failed to acknowledge Plaintiff's performance on formal mental evaluations. (AR 730). She did not specify Plaintiff's level of impairment in any of the paragraph B categories. (AR 729). The Court finds the ALJ did not err in rejecting Dr. Schilling's opinion.

### Dr. Peterson's Opinion

The ALJ called Dr. David Peterson, a psychologist, to testify as a medical expert at the supplemental hearing on March 9, 2021. (AR 78). Dr. Peterson opined that Plaintiff's impairments met the paragraph A criteria for Listing 12.04 but supported no more than mild functional limitations in the Paragraph B categories. (AR 30, 94–96). Plaintiff argues the ALJ erred in relying on Dr. Peterson's opinion. (OB 7–8). Defendant contends that the ALJ "properly assessed the supportability and consistency of Dr. Peterson's opinion and reasonably found the opinion to be persuasive based on those factors." (AN 14). The Court agrees.

The ALJ found Dr. Peterson's opinion persuasive because he reviewed the entire record, had the opportunity to interview Plaintiff at the hearing, was familiar with the SSA's rules and regulations, thoroughly explained his findings, and supported his opinion with multiple citations to the record. (AR 30). Substantial evidence supports this finding.

---

[4] "Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinion . . . will be." 20 C.F.R. § 404.1520c(c)(1)

[5] "Consistency. The more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion . . . will be." 20 C.F.R. § 404.1520c(c)(2).

- 11 -

Dr. Peterson asked Plaintiff clarifying questions during the hearing and made numerous citations to the record when explaining his opinion. (AR 30, 90–96). Furthermore, Dr. Peterson's opinion that Plaintiff suffered no more than mild limitations is consistent with Plaintiff's formal test results and many unremarkable MSEs. In 2013, Dr. Jain found Plaintiff's concentration was only slightly below average. (AR 30–31 (citing AR 529–31)). Five years later, Plaintiff achieved a perfect score on the Mini Mental Status Evaluation. (AR 616–20). Additionally, many of Plaintiff's MSEs note her normal affect, judgement, and concentration. (AR 30–31 (citing AR 495-97, 504, 529-33, 535-38, 544, 556, 559, 562, 565, 578, 616-22, 623-47, 681-716, 782-84, 1192-1285)).

In her decision, the ALJ noted Dr. Peterson's opinion that the relationship between cannabis, anxiety, and depression is complex. (AR 30). Dr. Peterson testified that he was "not able to rule out the influence of daily cannabis use from [Plaintiff's] reported symptoms because of that complexity." (AR 89). Plaintiff directs the court to Dr. Schilling's assertion that there is no literature suggesting a causal relationship between cannabis, general anxiety disorder, and major depressive disorder. (OB 10–11, 14; AR 42). As it is the ALJ's role to resolve conflicting medical evidence, the Court defers to her judgement. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

Dr. Peterson also opined that Plaintiff's malaise may be a side effect of her daily cannabis use. (AR 103). Plaintiff attributed her malaise to her ketamine treatments and argues that Dr. Peterson had "never prescribed ketamine as a treatment and [had] not read any studies regarding whether fatigue was an expected side effect of the medication." (OB 14 (citing AR 90-98)). This is a misrepresentation of Dr. Peterson's testimony. In response to Plaintiff's counsel asking if he had ever prescribed ketamine treatment, Dr. Peterson clarified that as a psychologist, he does not prescribe medications. (AR 100). However, Dr. Peterson teaches psychopharmacology to grad students and had therefore been "keeping track of the objective evidence of [ketamine treatment's] success." (AR 101). Dr. Peterson also testified that he had reviewed materials related to ketamine treatment side effects but had not come across any studies describing the type of lingering tiredness Plaintiff

described. (AR 92, 101). The ALJ did not err in determining Dr. Peterson thoroughly explained his findings.

B. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S DETERMINATION THAT PLAINTIFF EXPERIENCED MILD LIMITATIONS IN THE PARAGRAPH B CATEGORIES.

At step two of the sequential evaluation process, the ALJ must determine whether Plaintiff suffers from a severe impairment or combination of impairments. *Smolen v. Chater*, 80 F.3d 1273, 1290–91 (9th Cir. 1996). This is a *de minimis* screening instrument used to dispose of meritless claims. *Id.* at 1291. "An impairment or combination of impairments may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v.Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (internal quotation marks omitted); *see* 20 C.F.R. § 404.1520(c).

ALJs evaluate the severity of mental impairments using a two-step process. 20 C.F.R. § 404.1520a (b). First, the ALJ must determine if the claimant has a medically determinable mental impairment. C.F.R. § 404.1520a (b)(1). (AR 20). Here, the ALJ found Plaintiff had the medically determinable impairments of major depressive disorder, anxiety, PTSD, and substance (cannabis) dependence. (AR 20). Next, the ALJ must rate the claimant's degree of functional limitation in each of the paragraph B categories.[6] C.F.R. § 404.1520a (b)(2). Here, the ALJ determined Plaintiff had no more than mild limitations in any of the paragraph B categories. (AR 21).

The ALJ ultimately found Plaintiff's mental impairments nonsevere as they "did not cause more than mild limitations in [Plaintiff's] ability to perform basic mental work activities . . . ." (AR 20). Plaintiff alleges the ALJ's findings are not supported by substantial evidence. (OB 15). Defendant argues that the ALJ properly addressed the paragraph B criteria and that the record as a whole supports the ALJ's conclusion. (AN

---

[6] The broad functional areas of mental functioning (aka the paragraph B criteria) are set out in the disability regulations for evaluating mental disorders and in the listings of impairments. 20 CFR, Part 404, Subpart P, Appendix 1.

- 13 -

p.7). The Court agrees.

1. *Understanding, Remembering, and Applying Information.*

The ALJ determined Plaintiff had only mild limitations in understanding, remembering, or applying information. (AR 20) In support of this assertion, the ALJ cites Plaintiff's "essentially benign" mental status evaluations ("MSEs") which demonstrated "intact memory and average cognitive ability, even on formal testing." (AR 20). The Defendant asserts that the ALJ's decision is supported by substantial evidence and identifies several confirmative MSEs and medical opinions. (AN 7–8).

Plaintiff alleges that records from her treating providers demonstrate her need for and engagement with "seriously intensive treating modalities for her depression and PTSD, including EDMR, Ketamine treatment, and TMS." (OB p.9 citing AR 623-47; 761-74; 815-908; 938-54; 955-1070; 1136-91; 1192-1285; 1286-1302; 1313-72; 1382-1419). But the fact that Plaintiff required intensive treatment for her mental impairments does not show that the impairments affect her ability to understand, remember, and apply information.

Plaintiff also argues that the Commissioner improperly cherrypicked "the milder medical findings in order to support the ALJ's conclusion rather than a sampling of the findings present in the record as a whole." (Reply 2). The record contains conflicting evidence regarding Plaintiff's ability to understand, remember, and apply information. Plaintiff has periodically reported cognitive difficulties to her health care providers since 2013. (AR 457, 459, 467, 498, 519, 529, 689,695, 778,1112, 1199, 1224, 1252–53). Dr. Schilling's clinical notes from August to December 2020 note Plaintiff's deficient concentration and tangential cognitive functioning. (AR 1444–1497). However, Plaintiff's objective test results demonstrate intact cognition.

In October 2013, Dr. Jain found that Plaintiff's results on the K-BIT-2 test were "indicative of average cognitive functioning". (AR 530). In September 2018, Plaintiff scored a 30 out of 30 on the mini mental status examination ("MMSE"). (AR 618–20). After administering the MMSE, Dr. Abreu opined that Plaintiff's memory seemed fine and that she "demonstrated the ability to understand simple instructions during the evaluation."

(AR 621). Dr. Abreu found no issues with Plaintiff's attention or concentration and opined that Plaintiff's symptoms "seem mild" despite her subjective complaints. (AR 619–20). Dr. Abreu also opined that it was possible Plaintiff "may be embellishing symptoms." (AR 620).

Additionally, Dr. Peterson opined Plaintiff had no or mild limitations in the Paragraph B criteria. (AR 94–96, 621). Dr. Schilling may have opined that Plaintiff had marked limitations in the Paragraph B categories, but the ALJ properly rejected her opinion. The ALJ's determination that Plaintiff had only mild limitations in this category is supported by substantial evidence.

   *2. Interacting with Others.*

Citing medical opinions, Plaintiff's activities, and the record as a whole, the ALJ found Plaintiff had mild limitations in her ability to interact with others. (AR 20). Plaintiff argues that the cyclical nature of her impairments makes it so she can perform certain activities on some days but not others. (OB 10; Reply p.5). In support of this assertion, Plaintiff points to Dr. Schilling's letter to the Appeals Council. (OB p.10; Reply p.5). Defendant contends that the record supports the ALJ's conclusion. (AN 8). The Court agrees.  In her decision, the ALJ cites Plaintiff's ability to live and go grocery shopping with her husband. (AR 20). She also notes that Plaintiff travelled during the relevant time period and that some MSEs describe Plaintiff as "pleasant and cooperative with normal speech." (AR 20). Furthermore, the consultive examiner and medical expert did not opine that Plaintiff suffered moderate limitations in this area. (AR 20). Substantial evidence supports the ALJ's decision.

   *3. Concentrating, Persisting, and Managing Pace.*

The ALJ found Plaintiff had no more than mild limitations in concentrating, persisting, and managing pace. (AR 21 citing AR 323-31). Defendant asserts the ALJ's determination was supported by substantial evidence and cites MSEs noting Plaintiff's normal memory. (AN 8) Plaintiff argues Defendant cherrypicked from the milder MSEs to support the ALJ's findings. (Reply 2).

Though Dr. Schilling's treatment notes contain many references to Plaintiff's poor concentration and tangential cognitive functioning, (AR 1382–1490) the record also contains many unremarkable MSEs. (AR 323-31, 495-97, 500-23, 529-96, 616-47, 680-716, 761-94, 815-908, 938-1076, 1112-1135, 1192-1372, 1382-1419). Dr. Schilling opined this was due to the recurrent nature of Plaintiff's impairments, but other medical sources opined that Plaintiff's functional limitations were simply mild. (AR 42, 94–96, 616–20). It is the ALJ's duty to resolve conflicts in the medical evidence and the court will not substitute her judgement with its own. *Reddick*, 157 F.3d at 722.

Additional evidence supports the ALJ's determination that Plaintiff experienced mild limitations relating to her concentration. The ALJ correctly observed that Plaintiff's formal examination results and doctor's opinions suggest intact concentration. (AR 21). Dr. Abreu observed "no problems with [Plaintiff's] attention or concentration" and opined that Plaintiff may be embellishing her symptoms. (AR 619–20). Moreover, Dr. Abreu and Dr. Peterson agreed that Plaintiff experienced no more than mild limitations in her concentration. (AR 94–96, 616–20). As the ALJ's conclusion represents a rational interpretation of the evidence, the Court will not disturb her finding. *Thomas*, 278 F.3d at 954.

4. *Adapting and Managing Oneself.*

The ALJ found Plaintiff had only mild limitations in adapting and managing herself as she maintained normal grooming, presented with normal judgement, often had normal mood and affect, drove, prepared simple meals, and performed the activities of daily living. (AR 21). The record supports this finding. Clinical notes show that Plaintiff arrived at her appointments well-groomed and presented in an age-appropriate manner. (AR 495–96, 530, 536–38, 618). In her function report, Plaintiff stated she was able to drive a car, prepare simple meals, and perform household chores. (AR 325-27). Dr. Abreu determined Plaintiff would be able to manage funds should she be granted benefits. (AR 621). Furthermore, many of Plaintiff's MSE's note her normal affect and intact judgement, even whilst experiencing severe depression. (AR 323-31, 495-97, 500-23, 529-96, 616-47, 680-

716, 761-94, 815-908, 938-1076, 1112-1135, 1192-1372, 1382-1419). The Court finds no error.

V. **CONCLUSION**

Substantial evidence supports the ALJ's nondisability determination. The ALJ evaluated the severity of Plaintiff's mental impairments in accordance with 20 C.F.R. § 404.1520(a)(4)(ii). Furthermore, substantial evidence supports the ALJ's evaluation of the medical opinions of record.

**IT IS THEREFORE ORDERED affirming** the November 15, 2018 decision of the Administrative Law Judge (AR 25–47), as upheld by the Appeals Council on November 23, 2021. (AR 1).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and terminate this case.

Dated this 19th day of December, 2022.

Honorable Steven P. Logan
United States District Judge